**NORTH CAROLINA EASTERN MUNICIPAL POWER AGENCY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Carolina Power & Light Company, Intervenor.**

**No. 89–1205.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 13, 1990.

Decided March 30, 1990.

James N. Horwood, with whom Gary J. Newell and Margaret A. McGoldrick, Washington, D.C., were on the brief, for petitioner.

Robert H. Solomon, Atty. F.E.R.C., Washington, D.C., for respondent. Joseph S. Davies, Deputy Solicitor, and Hanford O'Hara, Atty. F.E.R.C., Washington, D.C., were on the brief, for respondent.

George A. Avery, with whom Lynda S. Mounts and Joel Kaufman, Washington, D.C., were on the brief, for intervenor.

Before BUCKLEY, WILLIAMS and D.H. GINSBURG, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

The North Carolina Eastern Municipal Power Agency here challenges an order of the Federal Energy Regulatory Commission requiring arbitration as a predicate to review by the Commission. We dismiss the petition for want of ripeness.

In 1981 the Agency entered into various agreements with Carolina Power & Light Company, under which CP & L provides partial requirements power service and various interconnection arrangements. The Power Coordination Agreement between the two allows the Agency to secure suppliers other than CP & L, subject to various restrictions. When the Agency seeks to use such other suppliers, § 6 of the Agreement requires it and CP & L to undertake negotiations to agree on "terms and conditions" of interconnection. Should these negotiations not bear fruit, "[e]ither party may make appropriate application to FERC for determination of such terms and condi-

tions for interconnection." At the same time, § 22 of the Agreement requires mandatory arbitration of all disputes (with exceptions not relevant here), "including, without limitation, disputes as to the applicability of [arbitration] provisions to a particular dispute."

The Agency negotiated a right to buy power from the South Carolina Public Service Authority (known among the parties here as "Santee Cooper," for two of the rivers harnessed for the purpose) under a contract good through 1993. For this the two parties were able to reach an agreement under § 6. But the Agency sought to extend (and expand) the Santee Cooper supply through 2000, and CP & L resisted. The Agency complained directly to FERC that the bases for CP & L's resistance were unsupported by the Agreement, and sought to have it set the "terms and conditions" of a new § 6 agreement. In response, CP & L contested the Agency's interpretation of key provisions of the Agreement, as well as the reasonableness of the proposed terms and conditions. CP & L also argued that the matter had first to be submitted to arbitration under § 22. On this last hook FERC bit, dismissing the case without prejudice to refiling after arbitration. *North Carolina Eastern Municipal Power Agency v. Carolina Power & Light Co.,* 45 FERC ¶ 61,487 (1988). On the Agency's request for clarification and petition for rehearing, the Commission somewhat confusingly seemed to say both that it regarded § 6 "terms and conditions" as arbitrable and also that the question of whether they were arbitrable was itself arbitrable under the Agreement. See 46 FERC ¶ 61,181 (1989).

The parties (CP & L and the Agency) now agree that the "contract" issues are indeed arbitrable *and* that disputes over "terms and conditions," when "pure" (i.e., not intertwined with contract interpretation), are not. The Agency's objection is that FERC erred in remitting the arbitrability of § 6 terms and conditions to the arbitrator (with the attendant risk of his

also deciding the terms and conditions themselves), despite the parties' apparent agreement.

Thus the prematurity of this petition. The arbitration has now started—we were told at oral argument that it would start on March 14. The Agency will not be harmed in the slightest if the arbitrator accepts the shared vision of *both* parties, i.e., the belief that terms and conditions disputes are *not* arbitrable. Even in the seemingly improbable event of his rejecting the views of the only parties before him, the arbitrator and parties have agreed that after he has resolved the contract disputes (which are logically addressed first) there will be a pause for the parties again to negotiate on "terms and conditions" for a new § 6 agreement. There are thus two junctures at which this dispute may likely disappear, without intervention of this court. And, even if the worst-case scenario develops (the arbitrator finds "terms and conditions" arbitrable and the parties cannot resolve them), all agree that the Agency can attempt to refer the pure terms and conditions to FERC for its determination. Should FERC insist that they must first be submitted to arbitration, the Agency could secure judicial review of that administrative abdication (as the Agency sees it). Given the unlikelihood of a temporary injury, and the availability of cure even in that event, we find the dispute as yet unripe and the Agency not yet "aggrieved" within the meaning of § 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b) (1988).

The petition is dismissed.